Danny Minton, an employee of the Goodyear Tire and Rubber Company, was injured on the job on September 22, 1976, *Page 972 
while operating a "precision wind-up" machine.
On September 22, 1977, he filed a complaint against Goodyear, Spadone Machine Company, Inc., and Portage Machine Company. The complaint contained three counts.
The first sought workmen's compensation from Goodyear. The second charged Spadone with wanton misconduct and negligence in (a) manufacturing the machine; (b) failing to provide a guard; (c) failing to provide safety devices; (d) failing to warn of the necessity for installing a safety device; (e) designing, manufacturing, or assembling the machine so that the safety device would not properly operate; and (f) selling the machine in an unsafe condition. The third count stated a claim against Portage for (a) manufacturing an imminently dangerous machine; (b) negligently or wantonly (i) manufacturing a machine without providing safety devices for its operator; (ii) failing to warn of the necessity for adding safety devices; and (iii) manufacturing or assembling the machine so that its safety device would not function properly; and (c) selling the machine in an unsafe condition.
No claim for relief was stated against any party described as a fictitious defendant or against any defendant whose name was alleged to be unknown. The caption of the complaint included twenty fictitious parties, variously described as being entities having to do with the manufacturing, distribution, assembly, or testing of the machine. Fictitious party No. 20 was described as:
 No. 20, whether singular or plural, that entity or those entities who were the co-employees of the Plaintiff and who were negligent and whose negligence contributed to Plaintiff's injuries on the occasion made the basis of this suit. . . .
The caption concludes:
 Plaintiff avers that the identity of the fictitious party Defendants is otherwise unknown at this time or if the identity is known, the identity as a proper party Defendant is not known to the Plaintiff, but each's true name will be substituted by amendment when the aforesaid lack of knowledge is ascertained.
Grantham v. Denke, 359 So.2d 785 (Ala. 1978), was decided by this Court on May 5, 1978. That decision allowed, for the first time since the 1975 amendment to the Workmen's Compensation Act, suits against co-employees. On July 12, 1978, Minton filed a second lawsuit against several of his co-employees. Another was added as an additional defendant in the first suit, i.e., the case now on appeal. While this second suit was still pending, Minton filed an amendment substituting as "Fictitious party No. 20" the same individuals who were defendants in the second suit. Subsequently, several of the defendants were dismissed on their motions, and Whisenant was added as a party defendant on August 17, 1979, when he was substituted for "Fictitious party No. 1," which is defined in the caption as follows:
 No. 1, whether singular or plural, that entity or those entities who or which manufactured the bias cutter being used on the occasion made the basis of this suit. . . .
Four individual defendants filed motions for summary judgment. Defendants Arnold and Cunningham argued that Minton's claim against them was barred by the statute of limitations because he knew at the time of his injury in 1976 both their names and the facts upon which his claim against them was based. The trial court initially denied the motions of all individual defendants, and this Court denied their petitions for leave to appeal. On November 26, 1980, these four defendants/appellees filed a second motion for summary judgment which the court granted. This appeal followed. We affirm.
The question presented is whether the amendment substituting these four individuals for fictitious defendants described in the caption of the complaint relates back *Page 973 
so as to avoid the bar of the statute of limitations. We hold that it does not because no claim or cause of action was ever stated against the individuals at any time before the statute of limitations ran. It can be argued that this interpretation of the Rules of Civil Procedure is a technical one, but it is not an unreasonable one. Although the rules do establish a system of notice pleading, they do not eliminate the necessity of alleging a theory of liability against a defendant before the limitation period runs, and merely listing a multitude of fictitious parties does not meet that requirement. It is not unreasonable to require the statement of a claim to be contained in the complaint itself.
Two cases already decided by this Court control this case. InHinton v. Hobbs, 349 So.2d 28 (Ala. 1977), we held that where the plaintiff knew the identity of a defendant at the time the suit was filed, that defendant could not be substituted for a fictitious defendant after the statute had run. There the Court said:
 Rule 9 (h), ARCP, is in the spirit of, and closely drawn from Tit. 7, § 136, Code, dealing with fictitious parties. Committee Comments, Rule 9, ARCP. It provides:
 "(h) Fictitious Parties. When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."
 Title 7, § 136, and its statutory predecessors were intended primarily for cases in which the name of defendant was unknown; they were emergency statutes and included cases in which neither the name nor the identity of defendant is known, as where the cause of action only is known but the party liable is not, and there is need for immediate seizure of property by attachment or other appropriate writ, or there is urgent need to get service at the same time the identity and name are ascertained. McKelvey-Coats Furniture Co. v. Doe, 240 Ala. 135, 198 So. 128
(1940); Roth v. Scruggs, 214 Ala. 32, 106 So. 182
(1925).
 Hinton concedes he knew the Bank's name at the time he filed the original complaint; however, this court is urged to adopt a liberal construction of 9 (h). It is argued that the proper interpretation of 9 (h) is to permit the substitution of a named party for a fictitious one and let the amendment doing so relate back even if, at the time of the filing of the original complaint, the true name of the defendant was known but the plaintiff lacked knowledge of facts giving him a cause of action against that defendant. Cases of the California Supreme Court and District Courts of Appeals are cited in support of this argument since California's fictitious parties statute is almost identical to Rule 9 (h). In this case we cannot construe 9 (h) to find that Hinton was ignorant of facts giving him a cause of action against the Bank.
 A careful review of the record demonstrates that under the most liberal of interpretations, Hinton could not be considered "ignorant" within the meaning of Rule 9 (h), ARCP.
349 So.2d at 29.
In this case, the plaintiff knew defendants Arnold and Cunningham at the time the suit was filed. What he did not know was that a cause of action existed against them. Hinton holds that Rule 9 (h), ARCP, will not allow a relation back under these facts.
The trial court relied on the second controlling case in granting summary judgment. In Fowlkes v. Liberty Mutual Ins.Co., 392 So.2d 803 (Ala. 1980), the Court held:
 It is clear . . . that Rule 9 (h) is not intended to operate when the cause of action is unknown, but operates only when *Page 974 
the identity of the adverse party is unknown. Thus, in order for a plaintiff to invoke Rule 9 (h) and 15 (c), the plaintiff must at the very least state a cause of action in his complaint against the fictitious party. [Emphasis added.]
392 So.2d at 806.
The plaintiff in this case did not meet this basic requirement. Thus, the trial court correctly held that the statute of limitations barred his actions against the appellees here.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.